USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/1/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
SHARON CHARLES COOPER,

                            Plaintiff,

                -against-

UNITED AIRLINES, INC.,

                            Defendant.
------------------------------------------------------------- X

15-CV-5645 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

      Plaintiff Sharon Charles Cooper ("Plaintiff") sued Defendant United Airlines, Inc. ("United") for damages arising from her arrest at London Heathrow Airport ("Heathrow"). The facts of this case start with what should have been a trip of a lifetime—an African safari—and end with an arrest following a missed connection at Heathrow. Although anyone who has had a difficult flight experience can sympathize with the plight of Ms. Cooper when she missed her connecting flight, neither that sympathy nor all of the facts presented in connection with Defendant's Motion for Summary Judgment, Dkt. 47, suffice to create a question of fact for the jury. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND[1]

      Plaintiff purchased a roundtrip ticket from Newark, New Jersey, to Nairobi, Kenya, using United Airlines frequent flier miles. Pl.'s Local Rule 56.1 Counterstatement ("56.1") ¶¶ 2, 3

---

[1] All facts discussed herein are undisputed, unless otherwise noted.

(Dkt. 56).[2] Plaintiff's return voyage involved a flight on Ethiopian Airlines to Heathrow. 56.1 ¶¶ 4-6, 8-10. She was to connect at Heathrow with a United flight back to Newark. *Id.* ¶ 10. According to Plaintiff, United made all of her flight arrangements. *Id*. ¶¶ 8-10.

Because her Ethiopian Airlines flight arrived late into London, Plaintiff missed her connection. *Id.* ¶¶ 19, 23-25, 35. She went to the United counter, but all United employees had left for the day, as United's last flight had already departed. *Id.* ¶¶ 31, 33. Plaintiff proceeded to the United Club Departure Lounge (the "Lounge"). *Id.* ¶¶ 36, 38-40; Def.'s Ex. B, Pl. Dep., 75:4-78:11 (Dkt. 48-2). By the time Plaintiff arrived at the Lounge reception area, all United employees had gone for the evening, and the Lounge was staffed by Sodexo employees.[3] 56.1 ¶¶ 40-41.

Sodexo is an independent contractor that operates the Lounge at particular hours. *Id.* ¶ 42. Sodexo and United are parties to a Service Agreement, which "sets forth the terms and conditions under which Sodexo will provide food and beverage services, cleaning services and employee staffing" at the Lounge. Def.'s Ex. F, Service Agreement ("SA"), ¶ 1 (Dkt. 48-6). The Service Agreement includes specifications concerning employee appearance and attitude, 56.1 ¶ 52, and notes that Sodexo will train Lounge employees in "[g]eneral knowledge about United," SA at 28.

After arriving at the Lounge reception area, Plaintiff explained that she had missed her connecting United flight and that she had arrived on Ethiopian Airlines. 56.1 ¶ 53. A Sodexo

---

[2]  The Court uses the following abbreviations herein: Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgement, Dkt. 54, is "Pl.'s Opp."; and the exhibits attached to the Declaration of Oliver Beiersdorf in Support of Defendant's Motion for Summary Judgment, Dkt. 48, are "Def.'s Ex. __."

[3]  Plaintiff asserts that any reasonable person would have presumed, as she did, that the staff on duty were United employees, but she does not dispute that they were, in fact, Sodexo employees. 56.1. ¶ 40.

2

employee informed Plaintiff of United's policy that, if a delivering carrier has arrived late, the customer must be rebooked by the delivering carrier. *Id.* ¶ 54. Pursuant to that policy, the Sodexo employee instructed Plaintiff to return to Ethiopian Airlines. *Id.* ¶ 56. Plaintiff told the employee that she was "very tired" and asked to use the Lounge restroom. *Id.* ¶ 61. The employee informed Plaintiff that she would need to present a reservation for an upcoming flight to enter the Lounge. *Id.* ¶ 82. At that time, Plaintiff did not have a reservation for an upcoming flight. 56.1 ¶ 64.[4]

Despite being told that she could not enter the Lounge, Plaintiff entered and sat down. *Id.* ¶¶ 87-89. A Sodexo manager contacted Heathrow Security. *Id.* ¶ 97. Plaintiff then contacted her son, who was in the United States, via FaceTime, and he proceeded to audio record the subsequent events. *Id.* ¶ 90. Heathrow Security arrived and informed Plaintiff that the Lounge staff did not have the capability to rebook her ticket from the Lounge. Def.'s Ex. G, FaceTime Tr. ("FaceTime Tr.") 2:5-6 (Dkt. 48-7). Heathrow Security reiterated to Plaintiff that she needed to go to the Ethiopian Airlines ticket counter to rebook her flight. Plaintiff refused because it was "too far" and she was "hot" and "tired." *Id.* 3:13-24. The following exchange ensued:

> Heathrow Security: You can't be here.
> Plaintiff: I can be here.
> Heathrow Security: No, you can't.
> Plaintiff: I'm going to sit right here.
> Heathrow Security: Ma'am, I'm going to get the police.
> Plaintiff: Get the police. I don't care.

---

[4] Although Plaintiff purports to dispute the Defendant's 56.1 Statement on this point, 56.1 ¶ 64, she acknowledged during her deposition that she did not have a ticket or a boarding pass for a later flight at the time she arrived at the Lounge. Pl. Dep., 69:4-20.

*Id.* 3:25-4:8.  Heathrow Security proceeded to call the Metropolitan Police ("Police").

56.1 ¶ 105.  At or around this time, Plaintiff's son contacted United by telephone to book her on the next available flight from London to Newark.  *Id.* ¶ 93.[5]

Shortly after Plaintiff's son had successfully booked a reservation for a United flight, the Police arrived.  FaceTime Tr. 27:21-28:8.  According to Plaintiff, the Sodexo employees told the Police that they did not want Plaintiff in the Lounge.  56.1 ¶ 144.  Although Plaintiff showed her reservation to the Police, Heathrow Security explained that Plaintiff could not remain in the Lounge, even with a reservation, because the Lounge closes overnight.  FaceTime Tr. 36:20-25.  Heathrow Security further advised Plaintiff that, in accordance with the rules of the airport, Plaintiff was not allowed to remain airside—that is, beyond the security gate—without a ticket for a flight on the same day, and that if Plaintiff remained in the Lounge, which was airside, Plaintiff would be removed and arrested.  *Id.* 36:20-37:3.  Plaintiff refused to leave.  *Id.* 37:15-16.

The Police warned Plaintiff more than once that she would be arrested if she did not voluntarily leave the Lounge.  *Id.* 38:13-17, 38:23-39:1.  Plaintiff still refused to leave.  *Id.* 38:23-39:5.  The Police then arrested Plaintiff.  56.1 ¶ 113.  Plaintiff missed her flight the next morning because she was in Police custody.  *Id.* ¶ 116.

In 2015, Plaintiff initiated this litigation against United, alleging false arrest/imprisonment, negligence, and intentional infliction of emotional distress ("IIED").

---

[5]  Plaintiff appeared to believe that she would be entitled to stay in the Lounge so long as she had a ticket on an upcoming United flight.  56.1 ¶ 63.  Regardless of whether that understanding derived from a representation made by a Sodexo employee, it did not comport with United's actual rules for accessing the Lounge.  *See* 56.1 ¶¶ 63, 65, 67.

4

Compl. ¶ 1 (Dkt. 1). United has moved for summary judgment on all claims. Dkt. 47. For the reasons discussed below, United's Motion for Summary Judgment is GRANTED in its entirety.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine dispute exists when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *SEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations and internal quotation marks omitted). Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson*, 477 U.S. at 256). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, *i.e.*, it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant." *Sourlis*, 851 F.3d at 144 (citations and internal quotation marks omitted).

### II. Choice of Law

This Court has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332: the parties are citizens of different states, and the amount in controversy

exceeds $75,000. Compl. ¶¶ 4, 7-8. "A federal court sitting in diversity . . . must apply the choice of law rules of the forum state," which in this case is New York. *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)).

The parties agree that New York law applies to vicarious liability principles and to Plaintiff's false arrest/imprisonment, negligence, and IIED claims. Accordingly, the Court applies New York law to those claims. The parties disagree, however, as to whether English or Illinois law applies to claims for punitive damages. Because the punitive damages issue is moot for the reasons discussed *infra*, the Court need not resolve the choice of law question relative to the punitive damages issue.

### III. Vicarious Liability

Plaintiff argues that although no United employees were present at the time of her arrest, United is vicariously liable for the conduct of the Sodexo employees in the Lounge. "The general rule is that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts." *Kleeman v. Rheingold*, 614 N.E.2d 712, 715 (N.Y. 1993) (citations omitted). "Control of the method and means by which the work is to be done is the critical factor in determining whether one is an independent contractor or an employee for purposes of tort liability." *Sanabria v. Aguero-Borges*, 986 N.Y.S.2d 553, 554 (2nd Dep't 2014). Factors relevant to assessing control include "whether the worker (1) works at his own convenience, (2) is free to engage in other employment, (3) receives fringe benefits, (4) is on the employer's payroll and (5) is on a fixed schedule. *Anikushina v. Moodie*, 870 N.Y.S.2d 356, 358 (1st Dep't 2009). Nevertheless, "incidental control over the results produced without further indicia of control over the means

6

employed to achieve the results is not sufficient to establish an employer-employee relationship." *Matter of Ted Is Back Corp.*, 475 N.E.2d 113, 114 (N.Y. 1984).

Plaintiff concedes that Sodexo was an independent contractor, 56.1 ¶¶ 40-42, but she argues that United is vicariously liable because United controlled Sodexo. As evidence of United's control, Plaintiff cites the provisions of the Service Agreement concerning the appearance of Sodexo employees as well as general rules of conduct, Pl.'s Opp. 22-24, and notes that Sodexo employees are expected to "have general knowledge about United Airlines," Pl.'s Opp. 24. Nevertheless, the Court is unpersuaded that rules concerning Sodexo employees' appearance and general conduct, or rules requiring that they possess general knowledge about United, demonstrate that United controlled the method and means of Sodexo's work. These rules reflect levels of incidental control that are consistent with United's general supervisory powers. *See Meyer v. U.S. Tennis Ass'n*, No. 1:11-CV-06268 ALC, 2014 WL 4495185, at *7 (S.D.N.Y. Sept. 11, 2014), *aff'd*, 607 F. App'x 121 (2d Cir. 2015) ("To be sure, [Defendant] did have some degree of control over Plaintiffs (uniforms, best practices, evaluations, and code of conduct), but the degree of control is not so great as to weigh in favor of finding the Plaintiffs to be employees as opposed to independent contractors." (internal quotation marks and citation omitted)); *see also Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 539 (S.D.N.Y. 2014), *aff'd sub nom. Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131 (2d Cir. 2017) (courts give required dress codes "little weight in the employee-versus-independent-contractor inquiry").

Nevertheless, even if United were vicariously liable, it would still be entitled to summary judgment because, as discussed *infra*, Plaintiff has failed to adduce evidence that Sodexo is liable for the claims alleged in the Complaint.

## IV. False Arrest/Imprisonment

Plaintiff claims that United is liable for false arrest and false imprisonment. "The common law tort of false arrest is a species of false imprisonment. . . . Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). Plaintiff's false arrest/imprisonment claim fails because Plaintiff has failed to establish that the Sodexo employees intended to confine her.

With respect to intent to confine, it is well settled in New York that a third party, "by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest." *Du Chateau v. Metro-N. Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (1st Dep't 1999); *see also Celnick v. Freitag*, 662 N.Y.S.2d 37, 39 (1st Dep't 1997); *Schiffren v. Kramer*, 640 N.Y.S.2d 175, 177 (2nd Dep't 1996); *Williams v. State*, 456 N.Y.S.2d 491, 492 (3rd Dep't 1982) ("Merely providing information to the [police], even when subsequently found to be in error, resulting in the arrest of an innocent man, does not subject the informant to liability for false imprisonment."). For false imprisonment liability to attach to a third party who causes or directs an arrest or imprisonment, the third party "must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Curley v. AMR Corp.*, 153 F.3d 5, 13–14 (2d Cir. 1998). There

must be an "unequivocal complaint or request to arrest" made to the police by the third party. *Raysor v. Port. Auth. of N.Y. & N.J.*, 768 F.2d 34, 39 (2d Cir. 1985).

Plaintiff has adduced no evidence that Sodexo employees requested, induced, or directed the Police to arrest her. Heathrow Security personnel, not Sodexo employees, contacted the Police after Plaintiff disobeyed their instructions to leave the Lounge. 56.1 ¶ 105. When the Police arrived, the Sodexo employees in the Lounge told the Police that they did not want Plaintiff in the Lounge. Pl. Dep., 104:17-18. Plaintiff has adduced no evidence to show, nor does she claim, that the Sodexo employees directed the Police to arrest her. *See* 56.1 ¶¶ 102-12. It was only after Plaintiff failed to obey the Police's instructions to leave the Lounge that she was arrested. FaceTime Tr. 38:23-25, 39:1, 41:7-8. No rational juror could find that Sodexo employees, who clearly wanted her out of the Lounge, intended to confine Plaintiff. *See Raysor*, 768 F.2d at 39 (no liability for false arrest where defendant store owner did not make an unequivocal request that plaintiff be taken into custody).[6]

Because Plaintiff has adduced no evidence that Sodexo employees directed the Police to arrest Plaintiff, no rational juror could find that United falsely arrested or falsely imprisoned her.

---

[6] Plaintiff argues that the Police arrested her based on "false information . . . that she was threatening and abusive towards Sodexo employees and United Club Lounge guests." Pl.'s Opp. 14. The record shows, however, that both Heathrow Security and the Police gave Plaintiff multiple opportunities to leave the Lounge without being arrested, even after receiving the allegedly false information about Plaintiff's conduct. FaceTime Tr. 35:24-25, 38:13-17, 38:23-39:1. Furthermore, the record shows that the Police determined Plaintiff was "loud and aggressive" based on their own observations, not based on information they received from the Lounge staff. Def.'s Ex. J., Witness Statement PC Greenhill (Dkt. 48-10). Under these undisputed circumstances, no rational juror could determine that the Police did not "exercise their own judgement" when they decided to arrest Plaintiff. *See Du Chateau*, 688 N.Y.S.2d at 15.

In all events, Plaintiff has failed to adduce any evidence that the Sodexo employees affirmatively induced the Police to arrest her, and her false arrest claim fails for that reason.

Therefore, this Court GRANTS United's Motion for Summary Judgment as to the false arrest/imprisonment claim.

## V. Negligence

Plaintiff next claims that United was negligent because it failed to provide Plaintiff with reasonable care, which resulted in her arrest. Plaintiff's negligence claim is barred because it is duplicative of her false arrest/imprisonment claim. *See Johnson v. Kings Cnty. Dist. Attorney's Office*, 763 N.Y.S.2d 635, 640 (2nd Dep't 2003) ("A plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment.") (internal quotation marks and citations omitted)). But, even if Plaintiff's negligence claim were not really just another way to collect damages for false arrest/imprisonment, Plaintiff's negligence claim would fail as a matter of law.

In order to establish a prima facie case of negligence under New York law, a plaintiff must prove that "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *Curley*, 153 F.3d 5 at 13 (citations omitted). "A common carrier such as an airline generally owes its passengers a duty of reasonable care under the circumstances." *Id.* (citations omitted). "This duty requires the common carrier to exercise care 'which a reasonably prudent carrier of passengers would exercise under the same circumstances, in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated.'" *Id.* (quoting *Lesser v. Manhattan & Bronx Surface Transit Operating Auth.*, 556 N.Y.S.2d 274, 276 (1st Dep't 1991)).

Plaintiff's theory is that the *Lounge* staff, not United Airlines writ large, owed her a "reasonable duty to assist her in rebooking a new ticket." Pl.'s Opp. at 17. Any such duty would be preempted by the Airline Deregulation Act ("ADA"). The ADA expressly preempts any state law "related to" an airline's "price, route, or service." 49 U.S.C. § 41713. Imposing a duty on an airline to offer rebooking assistance to passengers who miss connecting flights through the club lounge, as opposed to through other means such as the ticket counter, customer service window, toll-free telephone line or on-line assistance, would undoubtedly relate to the "services" provided by the airline. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008) ("Although this Court has not yet defined 'service' as it is used in the ADA, we have little difficulty concluding that [a New York statute] requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays relates to the service of an air carrier."). But, even if states could impose a duty on airlines to offer rebooking assistance via club lounges, Plaintiff fails to cite to any New York statute or case that establishes such a duty. "In the absence of duty, there is no breach and without a breach there is no liability." *Pulka v. Edelman*, 358 N.E.2d 1019, 1020 (N.Y. 1976).

In summary, Plaintiff's negligence claim fails because it is duplicative of her false arrest/imprisonment claim, it is preempted by the ADA, and United did not breach a duty of care owed to Plaintiff. Accordingly, this Court GRANTS United's motion for summary judgment relative to Plaintiff's claim of negligence.

### VI. Intentional Infliction of Emotional Distress

Plaintiff next asserts an IIED claim against United. To sustain an IIED claim in New York, a plaintiff must demonstrate: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4)

11

severe emotional distress. *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Campoverde v. Sony Pictures Entm't*, No. 01-CV-7775 (LAP), 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002) (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)).

Sodexo employees told Plaintiff how she should proceed in order to rebook her flight, denied her entry to the Lounge, instructed her to leave after she improperly entered, and contacted Heathrow Security when she refused to leave. Under these circumstances, no rational juror could find that United engaged in conduct so outrageous and extreme "as to go beyond all possible bounds of decency." *Murphy*, 448 N.E.2d at 90. Accordingly, this Court GRANTS United's Motion for Summary Judgment relative to Plaintiff's claim for IIED.

**VII.** **Punitive Damages**

Plaintiff seeks punitive damages to deter United from condoning Lounge employees' "fail[ing] to assist" passengers in the future. Pl.'s Opp. 25. Because the Court has granted United's Motion for Summary Judgment on all the substantive claims alleged in Plaintiff's Complaint, Plaintiff's claim for punitive damages is moot. *See Harrison v. Stanton*, 677 N.Y.S.2d 164, 164-65 (2nd Dep't 1998).

## CONCLUSION

For the foregoing reasons, United's Motion for Summary Judgment is GRANTED in its entirety. The Clerk of Court is respectfully directed to terminate Dkt. No. 47 and close this case.

**SO ORDERED.**

                                                       _____

**Date: August 1, 2017**                                   **VALERIE CAPRONI**
**New York, New York**                                 **United States District Judge**